UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DEMOS P. DEMOPOULOS, MICHAEL SPINELLI,
and LAWRENCE CUOMO, *as Trustees and
Fiduciaries of the Milk Industry Office Employees
Pension Fund*,

                Plaintiffs,                **REPORT & RECOMMENDATION**
                                                 **17 CV 7257 (ILG)(LB)**

    -against-

SWEET CLOVER FARMS INC.,

                Defendant.
----------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

        Plaintiffs, Trustees and Fiduciaries of the Milk Industry Office Employees Pension Fund, Demos P. Demopoulos, Michael Spinelli, and Lawrence Cuomo ("plaintiffs"), bring this motion for a default judgment against defendant Sweet Clover Farms Inc. ("defendant") pursuant to the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001-1461, and the Milk Industry Office Employees Pension Fund Agreement and Declaration of Trust ("Trust Agreement").

        Despite proper service of the summons and the complaint, defendant has failed to plead or otherwise defend this action. See Entry of Default, ECF No. 8. Plaintiffs now move for entry of a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Honorable I. Leo Glasser referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted.

# BACKGROUND[1]

Plaintiffs Demos P. Demopoulos, Michael Spinelli, and Lawrence Cuomo are the trustees of the Milk Industry Office Employees Pension Fund (the "Fund"). See Compl. ¶¶ 4–6. The Fund is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). Id. ¶ 4. The Fund was established pursuant to the terms of various collective bargaining agreements ("CBAs") between Local 584, I.B.T., a labor organization representing employees and various employers who are required to make contributions to the Fund on behalf of employees covered by the CBAs. Id. The plaintiffs are the "plan sponsor" within the meaning of Section 3(16)(B)(iii) of ERISA, 29 U.S.C. § 1002(16)(B)(iii), and fiduciaries of the Fund as defined by Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Id. ¶ 6. Defendant is a New York corporation that was bound "at all relevant times" to the CBAs with Local 584, I.B.T., or its successor union, Local 553, I.B.T. Id. ¶ 9.

Plaintiffs allege that defendant ceased to have an obligation to contribute to the Fund during the Fund's plan year ending March 31, 2017. Id. ¶ 10. According to plaintiffs, the cessation of defendant's obligation to contribute at the end of March 2017 constitutes a "complete withdrawal" from the Fund pursuant to ERISA Section 42043(a), 29 U.S.C. § 1383(a). Id. Therefore, plaintiffs maintain that defendant is obligated to pay withdrawal liability to the Fund for its proportionate share of the fund's unfunded vested benefits. Id. ¶ 11. Plaintiffs calculate defendant's withdrawal liability to be $469,040.00 based on Section 4211 of ERISA, 29 U.S.C. § 1391 and the Trust Agreement. Id.; Trust Agreement, ECF No. 12-2. By letter dated May 4, 2017, plaintiffs demanded payment of defendant's withdrawal liability in monthly installments or a prepayment of

---

[1] The facts are drawn from the uncontested allegations in plaintiffs' complaint and are taken as true for the purposes of deciding this motion. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

$171,870.00. Defendant did not contest plaintiffs' finding that it had withdrawn from the Fund nor the Fund's withdrawal liability assessment in accordance with ERISA Section 4219(b)(1), 29 U.S.C. § 1399(b)(1), and the Trust Agreement. Compl. ¶ 11; Demand for Payment Letter, ECF No. 12-3. Id. ¶ 13. Defendant failed to make a payment to the Fund by the due date stated in plaintiffs' May 4, 2017 letter to defendant. Id. ¶ 14. On July 31, 2017 plaintiffs notified defendant by letter that it had sixty days to cure its failure to make monthly withdrawal liability payments and begin making such payments. Id. ¶ 15. Defendant failed to make any payments and thus defaulted on its withdrawal liability obligations to the Fund pursuant to ERISA Sections 515 and 4219(c)(5), 29 U.S.C. §§ 1145, 1399(c)(5), and the Trust Agreement.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on December 13, 2017. Plaintiffs served defendant with the summons and complaint on December 15, 2017. See Summons, ECF No. 1-2. Defendant has failed to respond to the complaint. Plaintiffs requested, and on March 19, 2018, the Clerk of Court entered a certificate of default against defendant. See Clerk's Entry of Default, ECF No. 8. Plaintiffs filed the instant motion for a default judgment against defendant on May 18, 2018. See Mot. for Default J., ECF No. 10.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the

3

default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic, 109 F.3d at 108 (2d Cir. 1997). In order to determine whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (quoting Leider v. Ralfe, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)). If the admitted facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic, 109 F.3d at 111).

**I.    Liability**

ERISA Section 4201, 29 U.S.C. § 1381(a), provides that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable

4

to the plan in the amount determined under this part to be the withdrawal liability." "[T]he primary goal of the [Act] is to ensure that withdrawing employers are responsible for their fair share of inherited liabilities by mandating that 'an employer [that] withdraws from a multiemployer plan . . . is liable to the plan in the amount determined . . . to be the withdrawal liability.'" Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Company, Inc., 270 F. Supp. 3d 593, 602 (E.D.N.Y. 2017) (citing ERISA § 4201(a)). Pursuant to ERISA Section 4203, 29 U.S.C. § 1383(a), "a complete withdrawal from a multiemployer plan occurs when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."

When a plan sponsor determines that an employer has completely withdrawn from a fund, ERISA requires the sponsor to give the withdrawing employer notice stating the amount of withdrawal liability and the schedule for liability payments. ERISA § 4219, 29 U.S.C. § 1399(b). The statute requires this initial notification of withdrawal to be "as soon as practicable." 29 U.S.C. § 1399(b)(1). The withdrawn employer may seek review, identify any inaccuracy in the calculation of liability, or appeal the determination within 90 days of receiving notice. 29 U.S.C. § 1399(b)(2)(A). The plan sponsor must review the determination and issue a decision to the employer. 29 U.S.C. § 1399(b)(2)(B). ERISA requires the withdrawn employer to begin paying according to the schedule the plan sponsor provides within 60 days after the demand is sent, irrespective of whether the employer seeks review or an appeal of the plan sponsor's determination. 29 U.S.C. § 1399(c)(2). Should the withdrawn employer default, the plan sponsor may seek immediate payment of the outstanding withdrawal liability and "accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). Default occurs when a withdrawn employer fails to make a payment and fails

5

to cure that deficiency within 60 days. 29 U.S.C. § 1399(c)(5)(A).

"Generally, where a plan sponsor seeks withdrawal liability payments, it must 'show only that it complied with statutory procedural requirements.'" Division 1181, 270 F. Supp. 3d at 608 (quoting Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., No. 03 Civ. 4530, 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004)). Thus, "the plan sponsor must (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." National Retirement Fund v. Caesars Entertainment Corp., 15 Civ. 2048, 2016 WL 2621068, at *4 (S.D.N.Y. May 5, 2016) (citations omitted), report and recommendation adopted, 2016 WL 6601561.

Defendant here permanently ceased to be obligated to contribute to the Fund during the Fund's plan year ending March 31, 2017, which constitutes a "complete withdrawal" from the Fund under ERISA Section 42043(a), 29 U.S.C. § 1383(a). Compl. ¶ 10. On May 4, 2017, plaintiffs notified the defendant of its withdrawal liability obligation. Id. Plaintiffs' "demand letter" notified the defendant that its withdrawal liability totaled $469,040.00, which defendant was obligated to pay over 240 payments of $1,350.75 per month. See Demand for Payment Letter at 1–2. The letter stated that defendant had the option to prepay the full amount of withdrawal liability, $171,870.00, in whole or in part. Id. at 2. The letter also notified defendant that its first payment was due June 1, 2017. Id. Defendant did not respond to the May 4, 2017 demand letter, nor did defendant make the initial withdrawal liability payment due by June 1, 2017. See Compl. ¶ 13, 14. On July 31, 2017, plaintiffs notified defendant of its failure to make payments on its withdrawal liability obligation and demanded payment within sixty days. Id. at ¶ 16. Defendant failed to make a

6

payment within sixty days, thereby defaulting on its withdrawal liability obligations to the Fund, as provided by ERISA Section 4219(c)(5)(A), 29 U.S.C § 1399(c)(5)(A), and the Trust Agreement. Id.[2] As of December 13, 2017, defendant has not made any withdrawal liability payments. Id. at ¶ 14. Plaintiffs have alleged sufficient facts to establish that defendant is liable for the withdrawal liability apportioned by the Fund.

## II.    Damages

It is well established that a defendant's default amounts to an admission of liability for all well pleaded facts alleged in the complaint, except those relating to damages. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted); See also Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). Rather, a court must ensure that there is an adequate basis for the damages sought by a plaintiff before entering judgment in the amount demanded. See Santillan v. Henao, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).  On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with "reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic, 109 F.3d at 111). Upon careful review of plaintiffs' submissions, the Court should enter judgment for plaintiffs but should correct the amount sought as set forth below.

---

[2] ERISA Section 4219(c)(5)(A), 29 U.S.C § 1399(c)(5)(A) defines default as "the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure[.]"

7

Plaintiffs request damages of $234,044.30, plus $84.76 in per diem interest from May 18, 2018 through the date judgment is entered. See Pls.'s Mem of Law in Support of Mot. for Default J., ECF No. 11. This sum consists of: (1) $171,870.00 in withdrawal liability; (2) $19,579.05 in interest on the unpaid withdrawal liability from September 29, 2017 through May 18, 2018, with additional per diem interest of $84.76 per day running from May 18, 2018 through the date judgment is entered; (3) $34,374.00 in liquidated damages; (4) $7,638.75 in attorney's fees; and (5) $582.50 in costs. As proof of damages, plaintiffs submit: the affidavit of Sandy Nicosia, Acting Fund Administrator (ECF No. 12), with copies of the CBA between the Union and various employers, effective May 1, 1997 through April 30, 2000[3] (ECF No. 12-1), and the Trust Agreement —2017 (ECF No. 12-2); the declaration of Paris Nicholls, attorney for plaintiffs with the firm of Friedman & Anspach, (ECF No. 13); the contemporaneous billing records for plaintiffs' counsel (ECF No. 13-4); and the itemized receipt for plaintiffs' costs (ECF No. 13-5).

**A. Withdrawal Liability**

Pursuant to ERISA Section 4301, 29 U.S.C. § 1451(a)(1), the Fund is entitled to recover the amount of unfunded vested benefits that are "allocable" to defendant following defendant's complete withdrawal from the Fund. If a withdrawn employer, previously notified of the complete withdrawal and apprised of its allocable withdrawal liability, fails to make a payment as outlined in the schedule provided by the Fund and fails to cure the nonpayment within sixty days of the payment due date, the withdrawn employer is considered in default. ERISA § 4219, 29 U.S.C. § 1399(c)(5)(A). Once a withdrawn employer defaults, the Fund may seek to recover the employer's amount of withdrawal liability immediately and in full. Id. The method for calculating an

---

[3] Plaintiffs include memoranda of an agreement extending the existing CBA between the Union and the various employers to the time period relevant to the present action. The first memorandum extends the CBA from September 6, 2010 to September 5, 2014. The second memorandum extends the CBA through August 31, 2017.

employer's withdrawal liability is set forth by statute. See ERISA Section 4211, 29 U.S.C. § 1391(c)(3). "[O]nce a defendant is found to have violated ERISA, the plaintiff is entitled to recover any unpaid withdrawal liability and 'such award is a mandatory remedy.'" UFCW Local 348 Pension Fund, No. 12 CV 5837, 2013 WL 4525658, at *7 (E.D.N.Y. Aug. 27, 2013) (citations omitted). Furthermore, "[a]ny dispute concerning the plan's assessment of liability had to be settled through arbitration, and an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." Labarbera v. United Crane and Rigging Services, Inc., Nos. 08 CV 3274, 08 CV 3983, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) (adopting plaintiff's calculation of withdrawal liability "despite the lack of evidence regarding its calculation").

Sandy Nicosia, the Acting Administrator for the Fund, submits an affidavit with the instant motion, which affirms that defendant's unpaid withdrawal liability totals $171,870.00. ECF No. 12 at ¶ 6. Defendant did not challenge plaintiffs' calculation of its allocated withdrawal liability as permitted by statute. 29 U.S.C. § 1399(b)(2)(A). Thus, even if defendant had appeared in this action, defendant is precluded from challenging the Fund's calculation of its withdrawal liability because defendant did not challenge the calculation within the prescribed timeframe under the statute. See Division 1181, 270 F. Supp. 3d at 614 (noting that where an employer "failed to timely request arbitration, its ability to contest the amount of withdrawal liability due and owing is foreclosed.") Accordingly, I respectfully recommend that the Court should award plaintiffs $171,870.00 in withdrawal liability.

**B. Interest**

Plaintiffs are entitled to collect pre-judgment interest on the unpaid withdrawal liability. ERISA § 502, 29 U.S.C. § 1132(g)(2)(B). Pursuant to ERISA Section 502 and Article V, Sections 3–5 of the Trust Agreement, the Fund is entitled to collect interest of 18% per year on the withdrawal liability principal. U.S.C. § 1132(g)(2)(B); Trust Agreement, ECF No. 12-2.

Plaintiffs seek to recover a total of $19,579.05 for interest accrued on the withdrawal liability principal of $171,870.00 from September 29, 2017, through May 18, 2018. Pls.'s Sample Default Judgment, ECF No. 13-6. To find the total interest that defendant owes plaintiffs on the liability principal from September 29, 2017 through May 18, 2018, the Court multiplies the amount of contributions owed ($171,870) by the applicable interest rate (.18), multiplied by the number of days between September 29, 2017 and May 18, 2018 (231). The product of the calculation is divided by 365. Thus, the Court finds that plaintiffs are entitled to $19,579.05 (171,870.00 x .18 x 231) / (365) = 19,579.05. Accordingly, the Court recommends that plaintiffs should be awarded $19,579.05 in interest calculated through May 18, 2018.

Plaintiffs request an award of daily interest of $84.76 per diem. Pls.'s Sample Default Judgment. To determine the daily interest rate that defendant will owe plaintiffs for each day from May 18, 2018 until the date the judgement is entered, the Court multiplies the outstanding withdrawal liability ($171,870) by the applicable interest rate (.18) to obtain the interest per year. The Court then divides the yearly interest figure by 365 to arrive at the daily interest rate. The daily interest rate for unpaid contributions to the Fund is $84.76 per day ($171,870.00 x .18/365 = 84.757). Accordingly, it is respectfully recommended that plaintiffs should be awarded $19,579.05 in interest, plus $84.76 per diem from May 18, 2018 until the date the judgment is entered.

**C. Liquidated Damages**

Plaintiffs are entitled to receive liquidated damages on the unpaid withdrawal liability. 29 U.S.C. § 1132(g)(2)(C). ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the plan (up to 20 percent of the withdrawal liability). 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). The Trust Agreement provides that plaintiffs may seek to recover liquidated damages in the amount of twenty percent (20%) of the unpaid withdrawal liability in any action to enforce payment. Trust Agreement, Art. V, § 3. Twenty percent of the withdrawal liability awarded in the instant motion ($171,870.00) equals $34,374.00, which is greater than the interest due. Accordingly, I respectfully recommend that plaintiffs should be awarded $34,374.00 in liquidated damages.

**D. Attorney's Fees**

Section 502 of ERISA provides that a plaintiff may recover attorney's fees in any action to enforce a judgment to recover delinquent contributions. 29 U.S.C. § 1132(g)(2)(D). In the Second Circuit, the amount of attorney's fees to award a prevailing party is determined by calculating the "presumptively reasonable fee." Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). To determine this fee, the Court begins by multiplying the number of hours spent on the litigation by "a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). After determining the reasonable hourly rate, the Court multiplies

11

that rate by the reasonable number of hours expended, to determine a presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Broth. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley, 461 U.S. at 437). A request for attorney's fees must be supported by contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." Bd. Of Trs. Of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting Inc., No. 12 CV 399, 2013 WL 802034 at *4 (E.D.N.Y. Jan. 16, 2013) (internal citation omitted).

To determine what constitutes a reasonable hourly rate, this Court looks to the hourly rates that attorneys routinely charge for comparable work in the Eastern District of New York. Local No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr., Annuity Fund, Pension Fund, Apprenticeship Fund, Vacation Fund, Scholarship v. Crops Design Corp., No. 12 CV 4218, 2013 WL 5460871, at *6 (E.D.N.Y. Sept. 30, 2013). This district has found that the prevailing hourly rates are "generally between $300 and $400 for law firm partners, $200 to $300 for senior associates, and $100 to $200 for junior associates." LG Capital Funding, LLC v. 5Barz Int'l, Inc., No. 16 CV 2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019) (citing Tacuri v. Nithin Constr. Co., No. 14 CV 2908, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015)).

The Court respectfully recommends granting plaintiffs' request for attorney's fees at an hourly rate of $300. The Fund seeks attorney's fees at an hourly rate of $485 for the work performed by associate Paris Nicholls. Nicholls Decl. ¶ 16. Ms. Nicholls graduated from New York University School of Law in 2013 and has worked in her firm's labor and employment practice for approximately five years. Id. Plaintiffs state that the rate is a "blended rate which

encompasses work performed by both partners and associates at the firm" and is the rate "plaintiffs have always paid this firm." See Pls.'s Mem of Law in Support of Mot. for Default J., at 11. However, though the rate is calculated to encompass work performed by both partners and associates, only Ms. Nicholls completed work on this matter.[4] I therefore find that the use of a blended hourly rate for plaintiffs' attorney's fees on this case is unreasonable.[5]

Instead, it is respectfully recommended that the plaintiffs should be granted attorney's fees at an hourly rate of $300, which reflects a "reasonable rate for a more senior associate." LG Capital, 2019 WL 3082478, at *3 (citations omitted).

I turn next to the reasonableness of the hours worked. "[T]he number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." Finkel v. Metropolitan Sign & Maintenance Corp., No. 09 CV 4416, 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010) (citation omitted), report and recommendation adopted, 2010 WL 3927512 (E.D.N.Y. Oct. 5, 2010). According to the attached billing records, the firm spent a total of 15.75 hours preparing and litigating this case. See Billing Records for Plaintiffs' Counsel, ECF No. 13-4. A partial list of the work performed includes: drafting the complaint, reviewing court filings, drafting the motion for default, email correspondence with the Fund, and preparation of plaintiffs' motion for a default judgment. Id. The invoices provide clear entries and plaintiffs' attorney expended reasonable hours per task. Id. Accordingly, I respectfully recommend

---

[4] Plaintiffs attempt to justify the use of a blended rate by citing cases from the Eastern District of New York in which blended rates were allowed. However, blended rates are disfavored. Moreover, blended rates have been awarded where "attorneys with different billing rates and seniority worked together on a case." Riley v. City of Nre York, No. 10 CV 2513, 2015 WL 9592518, at *2 (E.D.N.Y. Dec. 31, 2015) (citations omitted). Here, only Ms. Nicholls worked on this case.

[5] Plaintiffs' request for a $485 hourly rate cites to mostly out-of-district cases regarding rates for partners. "The fee applicant shoulders the burden of establishing that the prevailing market rate and that the requested hourly rates are similar[.]" See King v. JCS Enterprises, Inc., 325 F. Supp. 2d 162, 169 (E.D.N.Y. 2004) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). Plaintiffs fail to establish that the $485 hourly rate requested is reasonable under the circumstances presented here.

that plaintiffs should be awarded attorney's fees of $4,725 for 15.75 hours of work at a rate of $300 per hour.

### E. Costs

Plaintiffs seek to recover $582.50 in costs. See ECF No. 13-5. Plaintiffs who prevail in an action under ERISA are entitled to "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc., No. 12 CV 5646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg, No. 08 CV 884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). Here, the costs incurred include the $400 filing fee and $182.50 for service of process. These costs are reasonable. Therefore, plaintiffs should be awarded $582.50 in costs.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted and judgment should be entered against defendant as follows: $171,870.00 in withdrawal liability; $19,579.05 in interest, plus $84.76 per diem from May 18, 2018 until the date the judgment is entered; $34,374.00 in liquidated damages; $4,725 in attorney's fees; and $582.50 in costs. Plaintiffs are hereby ordered to serve a copy of this Report and Recommendation upon defendant at their last known address and to file proof of service with the Court forthwith.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an

extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                                                         /S/  
                                                                  LOIS BLOOM  
                                                     United States Magistrate Judge

Dated: October 29, 2019  
       Brooklyn, New York